**Lucille Qualls WOODS,
Plaintiff–Appellant,**

v.

**DUNLOP TIRE CORPORATION,
Defendant–Appellee.**

**No. 1604, Docket 92–7198.**

United States Court of Appeals,
Second Circuit.

Argued May 28, 1992.

Decided Aug. 11, 1992.

James P. Davis, Buffalo, N.Y., for plaintiff-appellant.

Stanford G. Wilson, Atlanta, Ga. (S. Melissa Andrews, Elarbee, Thompson & Trapnell), for defendant-appellee.

Samuel A. Marcosson, Atty., Donald R. Livingston, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent J. Blackwood, Asst. Gen. Counsel, E.E.O.C., Office of Gen. Counsel, Washington, D.C., submitted a brief on behalf of amicus curiae E.E.O.C.

Before MINER, WALKER, and RONEY *, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Lucille Qualls Woods appeals from a summary judgment entered on January 23, 1992 in the United States District Court for the Western District of New York (Elfvin, J.) in favor of defendant-appellee Dunlop Tire Corporation ("Dunlop"). In her complaint, Woods alleged that Dunlop, her former employer, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g) and (k), by terminating her employment on the basis of race and gender. Prior to the filing of the complaint, the New York State Division of Human Rights ("DHR") had determined that there was probable cause to believe that Woods was the victim of discrimination and the Equal Employment Opportunity Commission ("EEOC") had issued a Notice of Right to Sue.

The district court concluded that Woods' Title VII claim was barred by res judicata because she failed to raise the claim in a previous action she had commenced prior to the DHR and EEOC determinations. Woods was unsuccessful in the previous action, in which she alleged that Dunlop's termination of her employment violated the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Woods now contends that the district court erred in applying res judicata because the LMRA action implicated a claim separate and distinct from Woods' Title VII claim. She asserts also that the application of res judicata is contrary to the Title VII scheme, since she was awaiting the outcome of administrative proceedings during litigation of the LMRA claim. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Lucille Qualls Woods was employed by Dunlop from March 1976 until July 1985. Eight months prior to the time that Woods' pension was to vest, Dunlop fired her. Dunlop asserted that it terminated Woods' employment because she was physically un-able to perform all of the functions required of her as a "Utility Person," and that she was not qualified for any other available position within the company. Woods, on the other hand, believed she was fired because she was black and female.

Woods subsequently filed a grievance with her union, United Rubber, Cork, Linoleum and Plastic Workers of America, Local No. 135 ("the Union"). In the grievance, Woods challenged the dismissal and demanded to be rehired. On June 15, 1985, Dunlop denied the grievance, and on July 23, 1985, an arbitrator also denied the grievance.

On July 31, 1985, Woods filed charges against Dunlop with the EEOC and the DHR, alleging that her employment was terminated because of her race and/or sex.

On December 4, 1985, while the administrative proceedings were still pending, Woods filed a complaint against Dunlop and the Union in the United States District Court for the Western District of New York ("*Woods I*"). In her complaint, Woods alleged that Dunlop violated section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, by firing her in violation of the terms of the collective bargaining agreement. That action was commenced shortly before the six-month statute of limitations period for LMRA claims was to expire. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (borrowing six-month limitations period from section 10(b), 29 U.S.C. § 160(b)). In *Woods I*, Woods also asserted that the Union had breached its duty of fair representation during the arbitration. Dunlop and the Union moved for summary judgment, asserting that Woods' termination did not violate the LMRA. By Memorandum and Order dated June 22, 1988, the district court granted summary judgment in favor of Dunlop and the Union and dismissed Woods' complaint.

On August 3, 1988, the DHR found that there was probable cause to believe that Woods had been the victim of discrimina-

---

* Hon. Paul H. Roney, United States Circuit Judge for the Eleventh Circuit, sitting by designation.

tion. Two years later, on November 21, 1990, the EEOC concluded its administrative process with respect to the charges and issued a Notice of Right to Sue.

After the issuance of the EEOC right to sue letter, Woods commenced the present action (*"Woods II"*) in the United States District Court for the Western District of New York. In her complaint, dated February 18, 1991, Woods alleged that Dunlop violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by wrongfully discharging her from employment with the company on the basis of her race and gender. Thereafter, Dunlop moved for summary judgment on the ground of res judicata, because Woods "could have raised the race and sex discrimination claims she is asserting in *Woods II* during the pendency of *Woods I*." By Memorandum and Order dated January 13, 1992, the district court granted summary judgment in favor of Dunlop. In doing so, the district court "conclude[d] that the plaintiff could have raised her Title VII claim in *Woods I* and that all prerequisites to the application of *res judicata* have been met."

It is from this grant of summary judgment that Woods now appeals. Woods argues that the doctrine of res judicata "is inapplicable in this case" because the causes of action in *Woods I* and *Woods II* were separate and distinct, and because a Title VII plaintiff has the right to full administrative review prior to instituting a lawsuit, which in this case could not be completed in time to join the Title VII claim with the LMRA claim.

## DISCUSSION

[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end.

*Grubb v. Public Utils. Comm'n of Ohio*, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930); *see also Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715,

719, 92 L.Ed. 898 (1948) ("the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose' ") (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877)); *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992); *Saud v. Bank of New York*, 929 F.2d 916, 919–20 (2d Cir.1991). Thus, res judicata or claim preclusion "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir.1992); *see also Greenberg v. Board of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir.1992); *compare Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (collateral estoppel or "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies*, 706 F.2d 1254, 1260 (2d Cir.1983).

■ Woods first claims that the district court erred in applying res judicata because the causes of action in *Woods I* and *Woods II* were separate and distinct. She asserts that "[i]t is abundantly clear that Title VII of the 1964 Civil Rights Act … creates a separate and distinct cause of action from that of the LMRA." This argument fails.

The district court correctly determined that the present action involves the same transaction, and therefore the same cause of action, for res judicata purposes. The factual predicates of the employment termination challenged in *Woods I* and *Woods II* were the same. Essentially the same

underlying occurrence was relevant to both the LMRA and Title VII claims. Both actions centered around Dunlop's firing of Woods, the reasons for termination, and her employment history, physical limitations, and qualifications. *See Pirela v. Village of North Aurora*, 935 F.2d 909, 912 (7th Cir.) (prior administrative discharge hearing—commenced by police department at which it was found that police officer should be fired—and Title VII claim concerned same transaction; "[a]t their most basic, both suits would require [the discharged officer] to prove that the Village acted in a discriminatory manner when it suspended and discharged [him].... Both of [the officer's] claims arose out of the same operative facts"), *cert. denied,* —— U.S. ——, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *Slaughter v. AT & T Info. Sys., Inc.,* 905 F.2d 92, 93–94 (5th Cir.1990) (concluding that ERISA suit arising from termination of employment involved same cause of action as previous suit alleging breach of contract and union duty of fair representation); *Natta v. Columbia Univ. College of Physicians & Surgeons,* No. 91 Civ. 7437, 1992 WL 80760 at * 3 (S.D.N.Y. 1992) (applying transactional approach and concluding that Title VII claim of racial discrimination and prior claim for failure to recognize tenure grounded on university statutes and employment contract constituted same cause of action for res judicata purposes).

It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint. *See Berlitz Sch. of Languages of Am., Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata.*"); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *see also* Restatement (Second) of Judgments § 24(b) & Comments; *but see Mitchell v. Board of Trustees of Pickens County Sch. Dist. A,* 380 F.Supp. 197, 200 (D.S.C.1973) ("Civil Rights Act creates a cause of action which is separate and distinct from [prior] cause of action under the Equal Protection Clause", although "this Court will probably require plaintiffs to raise both [claims] in the same complaint" in future cases). Thus, it is abundantly clear that the two actions involved the same cause of action for res judicata purposes.

Woods and amicus curiae, the EEOC, argue that res judicata should not apply to situations like the one presented here because application of the doctrine would be inconsistent with the scheme of Title VII. Although we have not previously had occasion to address this issue, and while this Court is committed to giving full effect to the Title VII administrative scheme set up by Congress, we are of the opinion that the language and policy of Title VII do not undercut the application of res judicata, and we see no reason militating against application of well-settled claim preclusion principles.

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex or national origin. *See* 42 U.S.C. §§ 2000e–2(a) through (d). While giving an aggrieved employee access to the federal courts, Title VII requires the employee first to submit a claim to the EEOC. *Id.* § 2000e–5(f)(1). "If a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court" after 180 days. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977). This does not diminish the fact that Congress viewed the prospect of full administrative review as an integral part of Title VII. *See e.g.* 118 Cong.Rec. 7168 (1972) ("It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC."). However, the fact that Congress preferred that Title VII disputes be resolved in the administrative forum does not necessarily excuse compli-

ance with general rules governing federal litigation respecting other potentially viable claims.

For instance, in *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court held that the commencement of EEOC proceedings for a plaintiff's Title VII claim did not toll the statute of limitations applicable to the plaintiff's cause of action under 42 U.S.C. 1981. In that case, a Title VII plaintiff waited more than three years before obtaining a right to sue notice and then attempted to bring suit alleging violations of Title VII and section 1981. In finding that the statute of limitations for the section 1981 claim had run, the Supreme Court reasoned that the section 1981 claim could have been asserted by the plaintiff any time during the pendency of the EEOC proceedings. *Id.* at 465–66, 95 S.Ct. at 1722–23. The Court emphasized that the plaintiff could have filed the section 1981 action and then requested a stay of the action pending the outcome of the EEOC administrative proceeding. *Id.* The Court found that the mere commencement of the administrative proceeding did not entitle plaintiff to special treatment such that plaintiff could sidestep the mandatory time-limitation requirements: "The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent.... We find no policy reason that excuses [plaintiff's] failure to take the minimal steps necessary to preserve each claim independently." *Id.* at 466, 95 S.Ct. at 1723.

In *Miller v. United States Postal Serv.*, 825 F.2d 62 (5th Cir.1987), the Fifth Circuit held that res judicata applied to bar a claim filed under the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a, reasoning that the claim should have been raised and resolved in plaintiff Miller's earlier Title VII lawsuit because both claims centered around termination of plaintiff's employment. *Id.* at 64. Apparently, at the time of the Title VII suit, Miller had not exhausted his administrative remedies with respect to the handicap discrimination claim so he did not assert that claim in the Title VII suit. *Id.*

While the same administrative scheme applied to both the Title VII and Rehabilitation Act claims, *see* 29 U.S.C. § 794a; *Morgan v. United States Postal Serv.*, 798 F.2d 1162, 1164 (8th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), the Fifth Circuit nevertheless found that Miller's failure to exhaust his administrative remedies on the Rehabilitation Act claim at the time he asserted his Title VII claim "did not preclude Miller from raising his handicap discrimination claim in the first lawsuit and that the district court correctly dismissed this action on the basis of *res judicata.*" *Miller*, 825 F.2d at 64. *See also Bailey v. USX Corp.*, 658 F.Supp. 279, 281–82 (N.D.Ala.1987) (Title VII retaliation claim barred by res judicata where plaintiff failed to assert claim in prior discriminatory termination action, even though at time of termination action EEOC had not completed administrative review of retaliation allegations; there is no "Title VII philosophy, much less statutory language, which would grant [plaintiff] an exception to the rule of *res judicata*"), *aff'd*, 850 F.2d 1506 (11th Cir.1988); *cf. Pirela*, 935 F.2d at 912–913 (Title VII lawsuit barred by res judicata where plaintiff could have alleged discrimination as affirmative defense at prior administrative discharge hearing and state court review, despite fact that plaintiff had filed discrimination charges with EEOC and had not yet been afforded full administrative review); *but see Ludwig v. Quebecor Dailies, Inc.*, 483 F.Supp. 594, 596 (E.D.Pa.1980) ("plaintiff was correct in not basing her first complaint upon Title VII when she had not as yet even begun to utilize the mechanism it provides.... [P]laintiff's Title VII claim was not 'a ground of recovery ... which might have been presented [in the prior suit].' It became so only after plaintiff received her right to sue letter, which was issued only five days before her first suit was dismissed.").

Our analysis leads us to the conclusion that Woods' Title VII action is barred by res judicata. We cannot agree with amicus curiae's contention that this result will put future Title VII plaintiffs to the impermis-

sible "Hobson's choice of either leaving their charges in the administrative process, hoping that in the meantime there will be no adverse judgment on other claims which will preclude their Title VII claims, or asking for a right to sue letter and abandoning the administrative mechanism in order to join all claims in a single lawsuit." While it is true that Woods was forced to bring her LMRA suit prior to completion of the administrative proceedings or else abandon that claim because the six-month statute of limitations on the LMRA claim was about to expire, Woods had two available courses she could have followed in order to avoid the sting of res judicata. As a first alternative, Woods could have filed her LMRA claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings. *See Railway Express*, 421 U.S. at 465, 95 S.Ct. at 1722. Once administrative review had been completed, Woods could have then joined her Title VII claim with her LMRA claim by amending the complaint in the LMRA suit. *See* Fed.R.Civ.P. 15(a) (permission to amend pleadings "shall be freely given"). Following this course, Woods' Title VII claim would receive full administrative review, and at the same time she could have preserved any other claims that she may have had arising from the same transaction. We are of the firm opinion that a district court faced with a stay request in this type of situation—where a Title VII plaintiff is seeking to defer further proceedings in non-Title VII causes of action while pursuing Title VII administrative remedies—should grant the stay absent a compelling reason to the contrary.

As a second alternative, Woods simply could have filed the LMRA action, sought a right to sue notice on her Title VII claim from the EEOC after 180 days, *see Occidental Life*, 432 U.S. at 361, 97 S.Ct. at 2451 ("[a]n aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed"), and then amended the complaint in her LMRA suit to include the Title VII claim. Had Woods chosen either of these two alternatives, she could have preserved her Title VII claim. Under the circumstances revealed, we find no reason to excuse Woods' failure to take these minimal steps necessary to preserve each claim independently, and conclude that her Title VII claim is not exempt from the bar of res judicata.

We have considered the remaining arguments and find them to be without merit.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.