**Eugene JANIK, Plaintiff,**

v.

**BUHRKE TECH INTERNATIONAL, INC., Defendant.**

**No. 97 C 4390.**

United States District Court, N.D. Illinois, Eastern Division.

May 1, 1998.

David Mark Bagdade, Carey M. Stein, Ashman & Stein, Chicago, IL, for Plaintiff.

Mark David Wetterquist, Attorney at Law, Chicago, IL, Burt W. Engelberg, Martin Cohn & Associates, Chicago, Il, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Eugene Janik, sued the defendant, Buhrke Tech International, Inc. ("Buhrke"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

### Background

In 1994, Buhrke began operations after purchasing assets from Buhrke Industries. Buhrke manufactures and sells tools and dyes for the canning industry. Before his

---

termination, Mr. Janik worked for Buhrke as a tool and dye maker. Mr. Janik worked for Buhrke Industries for over twenty years before beginning work with Buhrke.

After Buhrke began operations, it negotiated a new Collective Bargaining Agreement ("CBA") with Mr. Janik's bargaining representative, the International Association of Machinists and Aerospace Workers AFL—CIO Local Lodge No. 113 ("Union"). Except in instances where skill and ability are equal among employees, the CBA voids the effect of seniority in determining which workers will be laid-off. (Df.App. 8 at 5, § 8.2). Mr. Janik voted against the CBA.

In early 1996, Buhrke decided to lay-off four employees. (Rule 12(M) Statement ¶ 20). On May 8, 1996, a meeting was held and Mr. Janik was informed he was being terminated due to a lack of work at Buhrke. After the meeting, Mr. Janik met with Union Steward Rob Sass to find out what the Union was going to do about his termination. (Rule 12(N) Statement ¶ 50). Mr. Sass informed Mr. Janik there was nothing the Union could do about the termination. (Rule 12(N) Statement ¶ 51). Mr. Janik did not file a grievance with the Union regarding his termination. (Rule 12(M) Statement ¶ 27). At the time of his termination, Mr. Janik was fifty-four years old. (Rule 12(N) Statement ¶ 42).

On July 12, 1996, Mr. Janik filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). (Rule 12(M) Statement ¶ 8). On September 13, 1996, Mr. Janik filed suit in the Northern District of Illinois against Buhrke and the Union alleging violation of Section 301 of the Labor Management Relations Act ("LMRA"). On March 28, 1997, the IDHR entered a finding of lack of substantial evidence of discrimination. (Df.App.7). On April 4, 1997, the EEOC issued Mr. Janik a right to sue letter. (Df.App.2, Ex. 1). On May 27, 1997, the district court entered summary judgment in favor of Buhrke in Mr. Janik's LMRA suit.

(Df.App.9). Mr. Janik filed this suit on June 19, 1997.

## Res Judicata

 Buhrke argues res judicata bars Mr. Janik's ADEA claim due to the disposition of Mr. Janik's LMRA suit. Res judicata bars a second suit if there exists: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir.1996) (citation omitted). If all three requirements are met, a party is precluded from "relitigating issues that were or could have been raised in [the previous action]." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Mr. Janik does not dispute that there is an identity of parties and the summary judgment disposition in his previous suit was a final judgment on the merits. Rather, Mr. Janik suggests there is not an identity of the causes of action.

 While both of Mr. Janik's claims arise from his termination, that alone is insufficient to the meet the "identity" test. *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 225–27 (7th Cir.1993). "A claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Id.* at 198 (citation omitted). Thus, each complaint must be examined to determine whether Mr. Janik's claims are premised on similar factual allegations.

Mr. Janik's LMRA claim asserted that, before his termination, he worked for Buhrke Industries for twenty-two years and Buhrke for two years. (Df.App. 3 ¶ 6). Mr. Janik claimed his employment was governed by the CBA and that the Union had a duty to fairly represent him with respect to the implementation of a seniority system and the processing of grievances. (Df.App. 3 ¶¶ 7–8). Mr. Janik alleged he was fifty-four when terminated on May 8, 1996, and that under the CBA, in the event of a workforce reduction, he had "bumping rights" over less senior members of the Union. (Df.App. 3 ¶¶ 9–10).[1] He claimed he was denied these "bumping

---

1. "Bumping rights" allow a senior employee who is being laid-off to displace another employ-

ee with less seniority if the senior employee can

rights" and "[a]s a result, [he] was laid-off while younger, less senior members of the bargaining unit retained jobs in the bargaining unit." (Df.App. 3 ¶ 10). Mr. Janik further alleged that he was told by his Union Steward that there was nothing the Union could do about the termination. (Df.App. 3 ¶ 11).

Mr. Janik sued the Union alleging its refusal to process his complaint was made in bad faith and with the intent of terminating his membership because of his age. (Df.App. 3 ¶ 14). Mr. Janik sued the Union and Buhrke claiming Buhrke violated the CBA by not granting him "bumping rights." (Df.App. 3 ¶ 18).

Mr. Janik's ADEA claim alleges the same work history as his LMRA claim. (Df.App. 2 ¶ 6). Mr. Janik's ADEA claim also alleges he was fifty-four when he was terminated, he had "bumping rights," his "bumping rights" were violated, and "[a]s a result, [he] was laid off while younger, less senior members of the bargaining unit retained jobs in the bargaining unit." (Df.App. 2 ¶¶ 9–10). Mr. Janik's ADEA complaint alleges that, several months before his termination, Buhrke hired a substantially younger employee who Mr. Janik helped train. (Df.App. 2 ¶ 12). Mr. Janik also alleges Buhrke transferred younger employees to vacant positions but refused to transfer him although the position he was in was going to be replaced by a mechanical control. (Df.App. 2 ¶ 13). Mr. Janik alleges that Buhrke refused to abide by his "bumping rights" and instead terminated him based on his age. (Df.App. 2 ¶ 16).

Mr. Janik's LMRA claim and his ADEA claim are nearly identical. The only additional factual allegation in Mr. Janik's ADEA claim is Buhrke's hiring of a younger employee who was not terminated and Buhrke's refusal to transfer Mr. Janik. Further, both complaints allege Mr. Janik's "bumping rights" were violated resulting in a benefit to younger employees while rendering Mr. Janik's seniority useless. Indeed, in both suits

effectively do the work of the less senior employee. (Df.App. 8 at 6, § 8.5(d)).

**2.** "An aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge

Mr. Janik complained that younger employees were not laid-off while he was terminated. (Df.App. 2 ¶ 10; Df.App. 3 ¶ 10). While the complaints are not identical in all respects, they rely on "nearly the same factual allegations." *Herrmann,* 999 F.2d at 226.

Mr. Janik argues he could not have brought his ADEA claim in his previous suit because the EEOC did not issue its right to sue letter until April 4, 1997, after Buhrke moved for summary judgment in the LMRA suit. Mr. Janik says he was not under a duty to amend his complaint or request a right to sue letter any earlier than April 4, 1997. Mr. Janik is wrong.

The Seventh Circuit considered Mr. Janik's argument in a factually similar case. *Herrmann,* 999 F.2d at 224–25. In *Herrmann,* the plaintiff brought a claim under the COBRA provision of ERISA. The district court granted summary judgment on behalf of the defendant. While the ERISA case was on appeal, the plaintiff obtained a right to sue letter from the EEOC and filed suit. *Id.* The district court found res judicata barred the second suit. On appeal, the EEOC, in an amicus brief, argued that barring the second suit would cause plaintiffs to prematurely terminate the administrative process by requesting a right to sue letter after 180 days.[2] The Seventh Circuit held that the Supreme Court rejected a parallel argument when it concluded that the commencement of an EEOC proceeding for a Title VII claim did not toll the statute of limitations on a plaintiff's cause of action under 42 U.S.C. § 1981. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Seventh Circuit concluded that "[p]arties to Title VII actions enjoy no immunity from res judicata" and it was improvident and inefficient to endorse a rule that permitted "a significant fraction of legally questionable discharges [to] give rise to two suits." *Herrmann,* 999 F.2d at 225 (citation omitted).

The Seventh Circuit cited a variety of solutions for the plaintiff who encounters a loom-

has been filed." *Occidental Life Ins. Co. of California v. E.E.O.C.,* 432 U.S. 355, 366, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *accord* 29 C.F.R. § 1601.28(a)(1).

ing statute of limitations deadline on one claim while the EEOC is still processing a charge on another claim. The plaintiff could request the EEOC to accelerate the administrative process or "sue on his other claims, ask the court—and ... he would have a strong case for doing so—to stay the proceedings until the Title VII administrative process is complete, and then if the process does not end in a way that satisfies him amend his complaint to add a Title VII count." *Id.* at 225.[3]

### Conclusion

Mr. Janik filed his EEOC charge on July 12, 1996. (Df.App.2) He could have requested a right to sue letter 180 days later, on January 8, 1997. This is nearly five months before summary judgment was entered against Mr. Janik on his LMRA claim. Since under binding Seventh Circuit precedent Mr. Janik's suit in this court is barred by res judicata, summary judgment is granted in favor of defendants.

---

**3.** The Seventh Circuit reached the same conclusion in *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (7th Cir.1992), in which two years after filing an LMRA claim, the plaintiff, after receiving an EEOC right to sue letter, filed a claim under Title VII. *Id.* at 37–38. Like the Seventh Circuit, the *Woods* court found the plaintiff could have filed her LMRA suit and then requested a stay. *Id.* at 41. Alternatively, the plaintiff could have filed her LMRA suit, requested a right to sue letter from the EEOC after 180 days, and then amend-ed her suit. *Id.; accord Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044 (5th Cir.1987) (per curiam adopting district court opinion) (finding second suit barred by res judicata when plaintiff received EEOC right to sue letter three months before dismissal of first suit and could have moved to amend first claim although a motion for judgment on the pleadings, or in the alternative, for summary judgment, was pending in the first suit).