Robert J. DEVLIN, Andrew Hagan, Thomas Hewson, Steven Milone, Frederick Rinckwitz, individually, and on behalf of the Retired Officers, Employees, and their Beneficiaries of the Transportation Communications International Union, Plaintiffs–Appellants,

v.

TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION and Robert A. Scardelletti, Defendants–Appellees.

Docket No. 98–7237.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1998.

Decided April 13, 1999.

Arthur M. Wisehart, New York, NY (Wisehart & Koch, of counsel), for Plaintiffs–Appellants.

Jeffrey A. Bartos, Washington, DC (John A. Edmond, Guerrieri, Edmond & Clayman, P.C., of counsel), for Defendants–Appellees Transportation Communications International Union and Robert A. Scardelletti.

Before OAKES, CARDAMONE, and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge:

*Introduction*

Plaintiffs–Appellants Robert Devlin, Andrew Hagan, Thomas Hewson, Steven Milone, and Frederick Rinckwitz are retired members or former officers of Defendant–Appellee Transportation Communications International Union (the "Union" or "TCU"). Appellants brought suit individually and on behalf of a purported class of other retired members in the United States District Court for the Southern District of New York (John F. Keenan, *Judge* ), challenging the Union's (1) elimination of the TCU Death Benefit Fund; (2) attempt to rescind a Cost of Living Adjustment ("COLA") to the TCU retirement benefits; and (3) imposition of a $100 a month fee for inclusion in the TCU Medical Benefit Plan.

The district court granted the defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) in part and the court denied the motion in part. The court also granted, in part, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. The plaintiffs made a cross-motion pursuant to Fed.R.Civ.P. 56(f) for a continuance that would allow discovery allegedly necessary to oppose the defendants' motion. The court denied this cross-motion. The district court subsequently denied plaintiffs' motion for reconsideration of this case and *Devlin v. Transportation Communications Int'l Union,* 95 Civ. 0742 (S.D.N.Y.1995). This appeal and a separate appeal in 95 Civ. 0742 followed.

*Facts*

The facts in this case are not complicated in and of themselves, but they are complicated by other relevant cases. Plaintiffs filed a related case in the United States District Court in the Southern District of New York—*Devlin v. Transportation Communications Int'l Union,* 95 Civ. 0742 (S.D.N.Y.1995) (*"D vlin I "*)—mentioned above, from which a discussion of this case cannot be divorced. As well, other relevant litigation was and continues to be pending in the United States District Court for the District of Maryland. All of this we will address in turn below.

*The Parties*

Robert J. Devlin, Andrew Hagan, Thomas Hewson, Steven Milone, and Frederick Rinckwitz are retired officers, members, and former employees of the Transportation Communications International Union. Defendant–Appellee Robert A. Scardelletti is the International President of the Union.

*Medical Benefits*

For many years the Union provided its retirees with medical benefits at no cost to the retirees under the Railway Labor Organizations Group Life, Hospital, Surgical and Medical Insurance Plan ("the Plan"). However, retirees were notified that, effective January 1, 1994, they would be required to pay $100 per month to maintain their medical benefits. Active employees were provided with free medical benefits and were not affected by the January 1, 1994, change.

The change in the provision of retiree benefits was achieved through an authorization in the Plan Instrument. The Plan Instrument provides that "The Organizations participating in the Group Policies shall have the right to terminate, suspend, withdraw, amend or modify the Plan in whole or in part at any time."

Retirees were allegedly told more than once by TCU officials, both before and after retiring, that their health benefits would be paid throughout their retirement. The alleged communications stating such were both written and oral and included a 1964 letter to Union members and officers from the Grand President of the Brotherhood of Railway and Steamship Clerks.[1]

On February 2, 1995, the same parties who are plaintiffs in the instant matter filed suit in *Devlin I* (against the instant defendants, and one additional party) challenging the imposition of the $100 charge for retirees' medical benefits. The plaintiffs asserted claims under (1) the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"); (2) New York state law prohibitions on age discrimination, *see* New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.;* and (3) common-law breach of contract. By Opinion and Order dated June 26, 1995, the district court held that plaintiffs' state-law claims for age discrimination and breach of contract were preempted under § 514 of ERISA, 29 U.S.C. § 1144. In dismissing the age discrimination claim, the court noted that plaintiffs

had argued that their state-law claim withstood preemption because it alternatively could have been pled as a federal age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* The court stated that "[i]f Plaintiffs have a federal age discrimination claim, they should plead it." *Devlin v. Transportation Communications Int'l Union,.* No. 95 Civ. 0742, 1995 WL 380374, at *4 (S.D.N.Y. June 26, 1995). In a subsequent order, dated September 15, 1997, the district court granted summary judgment for defendants, dismissing the remainder of plaintiffs' complaint. Judgment was entered in *Devlin I* on September 17, 1997. (Plaintiffs brought a separate appeal from *Devlin I*, which we also decide today. In that case, *Devlin v. Transportation Communications Int'l Union,* 173 F.3d 94 (2d Cir. 1999), we affirm in part, reverse in part, and remand.)

As will be discussed more fully below, plaintiffs filed the instant action, *Devlin v. Transportation Communications Int'l Union,* 95 Civ. 10836 (S.D.N.Y.1995) (*"Devlin II "*), in the district court on December 22, 1995—that is, after the district court had dismissed plaintiffs' state-law claims in *Devlin I* as preempted, but before the court had either ruled on the remaining ERISA claims or entered judgment in that case. In contrast to *Devlin I*, plaintiffs' complaint in the instant action pled a claim under the ADEA. In addition, the complaint in this case challenged defendants' acts besides those taken with respect to the Medical Benefits Plan. We turn now to those other acts.

### Death Benefits

The Union maintained a Death Benefit Fund, which paid $300 to the member's or retiree's family upon the retiree's or member's death. The dollar amount was not increased from $300 since approximately 1930, allegedly because the fund was in financial trouble. The Death Benefit was

---

1. The Brotherhood of Railway and Steamship

Clerks. was the name of TCU prior to 1987.

eliminated in 1995 at the 1995 TCU convention, effective January 1, 1996. The Union justified the elimination on the basis of financial necessity.

### Retirement Plan COLA

TCU maintains a pension plan, known as the "TCU Staff Retirement Plan," which is administered by designated trustees. In 1990, the trustees implemented an automatic Cost of Living Adjustment ("COLA") to the Retirement Plan effective January 1, 1991.

In 1995, the current trustees of the Retirement Plan filed suit against the 1990 trustees in the United States District Court for the District of Maryland, alleging that the COLA amendment was enacted in breach of the 1990 trustees' fiduciary duty because the COLA amendment put an excessive strain on the Union's funds. *See Scardelletti v. Bobo*, 897 F.Supp. 913 (D.Md.1995) (*"Bobo I"*). The Maryland district court ruled in part that the 1990 trustees had breached their fiduciary duties. *See Scardelletti v. Bobo*, 1997 U.S. Dist. LEXIS 14498, at *21–27 (D.Md. Sept. 8, 1997). In addition, the court held that plaintiffs, as current trustees of the Retirement Plan, could repeal the 1991 COLA amendment as to the retirees who retired before 1991.[2] *See id.* at *29–33. Shortly thereafter, on October 6, 1997, the Executive Council of the TCU adopted a Plan amendment repealing the benefits granted by the COLA amendment to the Plan participants who separated from service with the TCU prior to 1991.

On October 14, 1997, Robert Scardelletti, Frank Ferlin, Jr., Joel Parker, and Don Bujold, who are the current trustees of the

Retirement Plan, brought suit in the United States District Court for the District of Maryland for declaratory and injunctive relief against Robert J. Devlin, Thomas deBarr, Donald A. Bobo, R.I. Kilroy, F.T. Lynch, and Frank Mazur, individually and as representatives of a class including all participants and their beneficiaries of the Retirement Plan who earned service credit under the Retirement Plan before May 15, 1993. *See Scardelletti v. Devlin*, 97 Civ. 3464 (JFM) (D.Md.1997) (*"Bobo II"*). The plaintiffs in *Bobo II* identified the questions before the court, common to the defendant class, as (a) whether the 1991 COLA amendment should be declared null and void as of the date of its adoption since the court in *Bobo I* found that it was adopted as a result of a breach of fiduciary duty by the former Retirement Plan trustees and (b) whether the October 6, 1997, amendment to the Plan which eliminated the 1991 COLA increase and all future increases for those Plan participants who left service prior to January 1, 1991, was a lawful amendment. The plaintiffs requested, among other things, a declaratory judgment that the October 6, 1997, Retirement Plan amendment did not violate ERISA.

In response to a claim by Devlin—who was originally the named defendant in *Bobo II*—that he could not properly represent a defendant class in Maryland, the court granted leave to name a new representative plaintiff on June 5, 1998.[3] This litigation is currently pending in Maryland, with a settlement conference scheduled for April 1999.

### The Instant Case

Plaintiffs-appellants Robert J. Devlin, Andrew Hagan, Thomas Hewson, Steven

---

**2.** The court in *Bobo I* determined that the retirees who retired prior to the 1991 COLA amendment being enacted did not rely on having the COLA. *See* 1997 U.S. Dist. LEXIS 14498, at *30. The court therefore held that the amendment could be repealed without violating ERISA as to Union members who retired prior to 1991 because, as to those retirees, it was not an accrued benefit. *Id.* at *29–33. The court also determined that the

COLA was not an otherwise unrepealable "retirement-type subsidy." *Id.* at *32–33.

**3.** The caption of the case is now *"Scardelletti v. Santoro."* We will continue to refer to the case by its original caption, however, to avoid confusing the reader by changing horses in mid-stream.

Milone, and Frederick Rinckwitz filed a class action complaint in the United States District Court for the Southern District of New York against the TCU and Scardelletti. *See Devlin II.* The plaintiffs alleged three categories of claims: (1) COLA claims; (2) medical benefits claims; and (3) Death Benefit Fund claims.

The plaintiffs complained of age discrimination in the Union's abolition of the Death Benefit Fund. The plaintiffs alleged that the elimination of the Fund was motivated by an "age-based animus against the plaintiffs," and it was also a retaliatory action against the plaintiffs for having made complaints about the reduction in other retiree benefits. Complaint, ¶ 36, at 9. The plaintiffs maintained that the elimination of the Fund constituted discrimination because it benefited the younger, active Union members by making more funds available to them. The plaintiffs also made a wrongful conversion claim, alleging that "Defendants have acted to appropriate to themselves or for their benefit the $4,600,000 [ ] Death Benefit Fund." Complaint, ¶ 23, at 6.

With respect to the COLA amendment to the Retirement Plan, the plaintiffs alleged that, while the amendment was not eliminated at the time the complaint was filed, the Union's intention to eliminate the COLA amendment was "motivated by defendants' invidious[,] age-based discriminatory animus towards plaintiffs and others similarly situated." Complaint, ¶ 67, at 15.

The plaintiffs alleged that the requirement that the retirees pay $100 per month for their medical benefits constituted age discrimination because the "younger, active officers and employees" did not have to pay for medical benefits. Complaint, ¶ 85, at 20. The plaintiffs maintained that the defendants' justification—that the cost was imposed on the retirees to address the high health care costs—was a pretextual reason used to mask discrimination because it was factually untrue, as retirees' benefits are primarily covered by Medicare. Complaint, ¶ 89, at 21.

The defendants moved, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss the complaint. Alternatively, the defendants moved for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiffs cross-moved, pursuant to Fed.R.Civ.P. 56(f), for a continuance to allow discovery allegedly needed to oppose the defendants' motions. On October 14, 1997, the district court (1) granted the defendants' motion to dismiss on the plaintiffs' medical benefits claim on the basis of *res judicata,* relying on the judgment in *Devlin I;* (2) granted the defendants' motion for summary judgment on the plaintiffs' Death Benefit Fund claims; (3) dismissed the plaintiffs' COLA amendment claims on standing grounds; and (4) denied the plaintiffs' cross-motion. *Devlin v. Transportation Communications Int'l Union,* 95 Civ. 10838, 1997 WL 634179, at *8 (S.D.N.Y. Oct.15, 1997).

This appeal followed.

## Discussion

Of the three categories of claims presented, the least problematic is the Death Benefit Fund elimination. For that reason, we begin our analysis there.

### A. Death Benefit Fund Elimination

The district court held that the elimination of the Death Benefit Fund ("the Fund") was lawful. The court held that the plaintiffs' contentions that the elimination of the Fund violated ERISA could not be sustained because (1) the Fund was not a "welfare benefit plan" or "pension benefit plan" subject to ERISA, 29 U.S.C. § 1002 (1999); and (2) even if the Fund were a plan under ERISA, the Fund did not vest such that it could not be amended in accordance with the TCU's constitutional amendment procedures, the court holding that it was so amended. Further, the court held that the elimination of the Fund did not violate the ADEA because the plaintiffs could not show discrimination, much less unlawful discrimination. The Fund was terminated as to all members and retirees, not just the older constitu-

ents. The court also held that the plaintiffs could not establish that the elimination of the Fund was discriminatory in impact because they could not make a showing that there was a disparate impact on a protected class.

### 1. ERISA

■ Appellants argue that the district court erred in holding that the Fund was a gift outside the reaches of ERISA. The appellants point to both the fact that the TCU members paid into the Fund and the fact that requests for death benefits were processed by the Fund as "claims" to support the argument that the Fund provided a welfare or pension benefit within the meaning of ERISA. The appellants maintain that, at a minimum, there are disputed fact issues precluding dismissal or summary judgment. We disagree with the appellants.

The district court correctly held that the Death Remembrance Fund did not come within the ERISA definitions of an "employee welfare benefit plan" or "welfare plan."[4] While those terms are not specifically defined as they apply in this situation by the text of 29 U.S.C. § 1002 ("Definitions"), 29 C.F.R. Pt. 2510 specifies that the type of payment at issue here is excluded from the meanings of "employee welfare benefit plan" and "welfare plan." The relevant portion of the regulations provides that

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a program under which contributions are made to provide remembrances such as flowers, an obituary notice in a newspaper or a small gift on occasions such as the ... death ... of employees, or members of an employee organization, or members of their families.

29 C.F.R § 2510.3–1(g).

While appellants argue that this is not a "small gift" made as a "remembrance[ ]," we disagree. Plaintiffs maintain that "in 1931, when the fund was initially established at $300 ... the amount would almost suffice to buy a new car." We do not find this consideration compelling. What is compelling is that the $300 figure was not increased at least for the past 50 years, and should now certainly be considered a "small gift." Appellants have offered us no indication that the money provided by the Death Benefit Fund was—by the time of its elimination—intended to be anything other than a small remembrance. The Union President, Robert Scardelletti, maintained that since the 1959 Regular Convention of the Union, it had been recognized that the $300 was a token gift, as opposed to a benefit useful for funeral expenses. While the appellants argue that the 1922 issue of the Union newsletter, The Railway Clerk, makes clear that the Fund was intended to be a benefit fund of a sort that would now fall within ERISA parameters, we do not find this argument persuasive. An examination of the newsletter reveals that the "process" for paying the $300, to which the appellants give much import, simply ensures that it is only members in good standing who have paid their dues who can receive (or have their beneficiary receive) the money. While appellants also argue that the fact that the members are required to designate a "beneficiary" for receipt of the money is telling, we disagree. Such is akin to specifying an address to which flowers should be sent in the event of death: It is not a legally meaningful act.

### 2. Discrimination Claim

■ The appellants contend that the district court erred in determining that a prima facie case of age discrimination was not established. We disagree.

■ Every member, officer, or retiree of the TCU will be denied the $300 now that the Death Benefit Fund has been eliminated. We can take judicial notice of

---

4. Appellants do not challenge on this appeal the district court's ruling that the Death Benefit Plan was not a "pension benefit plan" as that term is used in ERISA.

the fact that everyone ultimately dies and the fact that more people die when they are older than when they are younger, but we do not find these facts sufficient to sustain an age discrimination claim against the TCU.

This portion of the district court's decision is affirmed.

### 3. Conversion

■ The appellants argue that a state-law cause of action for the tort of conversion can stand. However, the district court did not address the issue of whether an action for conversion of the Death Benefit Fund by the defendants could be sustained. The plaintiffs' complaint did plead such a claim. *See* Complaint, ¶ 23, at 6 ("Defendants have acted to appropriate to themselves or for their benefit the $4,600,-000 million [sic] Death Benefit Fund. . . ."). Though we could entertain this claim for the first time at the appellate level, *see Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d Cir.1994), we instead leave it to the district court to "pass on the issue in the first instance," *Brocklesby Transp. v. Eastern States Escort Services*, 904 F.2d 131, 134 (2d Cir. 1990). We therefore remand this issue to the district court.·

### B. Medical Benefits Claims

■ The district court divided the medical benefits claims into two clusters: claims that were made in *Devlin I* (the state law claims and the ERISA claims) and the claims that were not made in *Devlin I* but could have been made (the federal age discrimination claim under the ADEA). The district court held that all of these claims related to the medical benefits were barred by the doctrine of *res judicata*. We disagree, and we vacate and remand.

Appellants filed their ADEA claims in this lawsuit approximately eleven months after they filed *Devlin I*—but well before the proceedings in *Devlin I* had been brought to completion, and before judg-ment had been entered in *Devlin I*. Appellants explain their delay in filing the ADEA charges (in *Devlin II* ) as attributable to their waiting until after they had received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). The district court focussed, however, not on plaintiffs' delay in filing the ADEA claims, but on their choice to do so in a second, separate action. The district court analogized this case to *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993), and determined that *res judicata* applied because the plaintiffs could have

> sought a stay of *Devlin I* upon filing charges with the EEOC. Once the EEOC notified Plaintiffs that it rejected their complaint, Plaintiffs could then have joined their ADEA claim to *Devlin I*. Plaintiffs could also have amended their complaint in *Devlin I* as soon as they received the notice of termination letter from the EEOC on September 28, 1995. In fact, the Court instructed Plaintiffs to make their EEOC claim in *Devlin I*, *see Devlin I*, 1995 WL 380374, at *4 (S.D.N.Y. June 26, 1995), but Plaintiffs instead chose to file the instant lawsuit. Unfortunately for Plaintiffs, this choice was fatal to their ADEA claim which the Court hereby dismisses as barred by the doctrine of *res judicata*.

*Devlin*, 1997 WL 634179, at *8. However, the district court's reliance on *Woods* is misplaced due to the factual differences between that case and the instant one.

The plaintiff in *Woods* was Lucille Qualls Woods, an employee of Dunlop Tire Corporation from 1976 until 1985. *See id.* at 37. She was fired eight months prior to the vesting of her pension, and she asserted that she was fired because she was black and female. She filed a grievance with her union which was denied, and she filed charges with the EEOC and New York State Division of Human Rights

("DHR") on July 31, 1985. While the administrative proceedings were still pending, she filed suit on December 4, 1985, in the United States District Court for the Western District of New York, alleging a violation of the Labor Management Relations Act ("LMRA"), arguing that she was fired in violation of the terms of the collective bargaining agreement. The case was dismissed on summary judgment in favor of Dunlop and the Union on June 22, 1988. *See Woods v. Dunlop Tire Corp.*, No. CIV–85–1464, 1988 WL 66173 (W.D.N.Y. June 23, 1988).

On August 3, 1988, more than three years after Woods filed charges against Dunlop with the EEOC and the DHR, the DHR determined that there was probable cause to believe that Dunlop had discriminated against Woods. *See Woods*, 972 F.2d at 37. On November 21, 1990, the EEOC concluded its administrative review and issued a Notice of Right to Sue.

On February 18, 1991, Woods filed a complaint alleging a violation of Title VII. Dunlop moved for summary judgment on *res judicata* grounds because the race and sex discrimination claims made in the 1991 complaint could have been made in the 1985 complaint. The district court granted summary judgment in favor of Dunlop, concluding that *res judicata* applied. *See Woods v. Dunlop Tire Corp.*, No. CIV–91–98E, 1992 WL 10845, at *4 (W.D.N.Y. Jan. 21, 1992).

On appeal by Woods, the Second Circuit Court of Appeals affirmed the district court's judgment, finding that *res judicata* applied, and Woods failed to take minimal steps to ensure that her Title VII claims would not be barred if the administrative review were a long time in coming. *See Woods*, 972 F.2d at 40–41. The court determined that Woods could have filed her first suit and sought a stay in the district court pending the outcome of her EEOC review. Upon completion of the administrative review, she could have then joined her Title VII claim to her initial lawsuit. The court found that Woods could have

alternatively sought a Right to Sue Notice on her Title VII claim 180 days after she filed it with the EEOC. Such an accelerated process is specifically permitted if a person is unwilling to wait for the conclusion of the EEOC review. Woods then could have joined her Title VII claim with her initial claim. The court concluded that "[u]nder the circumstances revealed, we find no reason to excuse Woods' failure to take these minimal steps necessary to preserve each claim independently, and conclude that her Title VII claim is not exempt from the bar of res judicata." *Id.* at 41.

A key phrase in our resolution of *Woods* was the phrase "[u]nder the circumstances revealed." *Id.* We are able to differentiate the situation before us from the circumstances in *Woods* with great ease. According to the docket sheet in this case, this case was referred to Judge Keenan when it was filed, and it was accepted as related to *Devlin I. See* Civil Docket for Case # : 95–CV–10838 at 3, *Devlin v. Transportation Communications Int'l Union*, 95–CV–10838 (S.D.N.Y. Apr. 28, 1998). The court therefore was aware that this case existed and that it related to *Devlin I.* Unlike the circumstances in *Woods*, plaintiffs here did not wait until years after entry of judgment in their initial case to file this related action. Rather, *Devlin I* was still pending when the EEOC concluded its review and when *Devlin II* was filed. The question then becomes whether the appellants should be hoisted with their own procedural petard for failing to plead the ADEA claim in *Devlin I* as the district court instructed. *See Devlin v. Transportation Communications Int'l Union*, 95 Civ. 0742, 1995 WL 380374, at *4 (S.D.N.Y. June 26, 1995) ("If Plaintiffs have a federal age discrimination claim, they should plead it.").

Given the district court's instruction that the appellants should plead their ADEA claim in *Devlin I*, we are puzzled as to why the appellants did not do so. We do not think, however, that their actions should

lead to the dismissal of their ADEA claim, given the fortuitous circumstance that the same district judge had both *Devlin I* and *Devlin II* on his active docket at the same time.

 A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte. See In re Adams Apple, Inc.,* 829 F.2d 1484, 1487 (9th Cir.1987). Rule 42(a) provides that consolidation is acceptable "[w]hen actions involving a common question of law or fact are pending before the court." Fed. R.Civ.P. 42(a). The Rule should be prudently employed as "a valuable and important tool of judicial administration," *Consorti v. Armstrong World Ind.,* 72 F.3d 1003, 1006 (2d Cir.1995), *vacated on other grounds,* 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996), invoked to "expedite trial and eliminate unnecessary repetition and confusion," *Miller v. United States Postal Serv.,* 729 F.2d 1033, 1036 (5th Cir. 1984). In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy. *See Miller,* 729 F.2d at 1037. However, under the applicable law, efficiency cannot be permitted to prevail at the expense of justice—consolidation should be considered when "savings of expense and gains of efficiency can be accomplished *without sacrifice of justice." Consorti,* 72 F.3d at 1007.

We recognize that requiring a district judge to have a thorough familiarity with the facts and legal issues in every single case on a district court's docket is ludicrous given the heavy caseload district courts carry. In this case, however, both *Devlin* cases were on the court's active calendar such that we can conclude the district court could well have considered consolidating them. *See, e.g., Miller,* 729 F.2d at 1036 ("The proper solution to the problems created by the existence of two or more cases involving the same parties

and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure.") (citation and internal quotation marks omitted). We are not ready to review the decision not to consolidate here because it is unclear to us that the district court fully contemplated the option. Since our companion decision today in *Devlin,* 173 F.3d 94 (2d Cir.1999), reopens *Devlin I,* we vacate the district court's application of *res judicata,* and we remand for consideration of consolidation.

### C. COLA Amendment Claim

In the district court's opinion dated October 14, 1997, the court determined that the plaintiffs lacked standing to bring their claim challenging the Union's attempt to rescind the COLA amendment. *See Devlin,* 1997 WL 634179, at *4–5. The court found that the plaintiffs did not meet the "injury in fact" requirement necessary to show that a case or controversy addressable by the judiciary under Article III of the Constitution existed. *See id.* at *5. The court noted, however, that

> [i]f Defendants win the *Bobo* case, and thus succeed in rescinding the COLA amendment, then Plaintiffs may be able to satisfy the constitutional standing requirements. At this time, however, there is no indication about the outcome of the *Bobo* litigation, and it is therefore premature for the Court to consider this claim on the merits.

*Id.* [5]

On September 8, 1997, the district court in *Bobo I* had determined that the Union could rescind the COLA amendment as applicable to retirees who retired after 1991 because such persons had not relied on the COLA in making their decisions to work or to retire. *See Scardelletti,* 1997 U.S. Dist. LEXIS 14498, at *28–33. Shortly thereafter, in a letter from Robert

---

**5.** The reference to "the *Bobo* case" must have been to *Bobo I,* as *Bobo II* had not yet been

filed.

A. Scardelletti dated October 10, 1997, participants and beneficiaries of the TCU Staff Retirement Plan were notified that, effective November 1, 1997, the COLA amendment was eliminated as to those who retired or otherwise terminated their employment prior to January 1, 1991.

Appellants then moved in November of 1997 for (1) reconsideration in *Devlin I* and *Devlin II;* (2) vacatur of the judgments in *Devlin I* and *Devlin II;* and (3) a preliminary injunction in *Devlin II.*

The district court denied these motions. *See Devlin v. Transportation Communications Int'l Union,* Nos. 95 Civ. 0742 & 95 Civ. 10838, 1998 WL 37545 (S.D.N.Y. Jan.29, 1998). Specifically, with respect to the COLA, the court said that

> the Court denies Plaintiffs' motion despite the developments of the *Scardelletti v. Bobo* case in the District of Maryland.... In the instant case, there is an action proceeding in the District of Maryland that will decide the issue that Plaintiffs attempt to reopen in *Devlin II.* Many of the *Devlin II* plaintiffs are involved in that Maryland action, and the District of Maryland has much familiarity with the COLA issue from its involvement in Scardelletti v. Bobo. On this basis, the court concludes that Plaintiffs will not be unduly prejudiced by a denial of their Rule 59 motion in *Devlin II.* For similar reasons, the Court denies Plaintiffs' Rule 60 motion regarding the COLA issue.

*Id.,* 1998 WL 37545, at *2. The court then determined that the plaintiffs' Rule 65 motion for a preliminary injunction was moot. *See id.*

The appellants now take issue with the district court's denial of the preliminary injunction and determination that they lacked standing.

■■■■ With respect to the district court's initial determination on standing, we review the court's determination de novo. *See Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 594 (2d Cir.1993)

(district court's dismissal for lack of standing is reviewed de novo, unless it relied on the resolution of disputed facts). Doing so, we can easily affirm the district court. At the time the court issued the opinion addressing the standing issue, the Maryland district court handling *Bobo I* had ruled that the COLA amendment could be repealed, and the amendment had been repealed, effective November 1, 1997. However, given that the district court in *Devlin II* issued its opinion regarding standing and the COLA issue only five days after the date on the letter from Robert A. Scardelletti to all participants and beneficiaries of the TCU Staff Retirement Plan, it is likely that the district court did not know that the amendment had been repealed, effective November 1, 1997. It would be a lilliputian academic exercise for us to discuss whether there actually *were* standing at the time the district court issued its opinion. Suffice it to say that we agree with the district court's determination that, given the information it had before it on October 15, 1997, it seemed that the plaintiffs had no standing because the amendment had not yet been repealed.

■■■■ The more relevant question is whether we can affirm the district court's ruling on January 29, 1998, when the court had before it the information that (1) the district court in *Bobo I* allowed the COLA to be repealed as to those who had terminated employment with TCU prior to 1991; (2) the COLA had in fact been repealed; and (3) an action determining the legality of the repeal was still pending in Maryland. We determine that we can.

■■■■ The district court addressed Federal Rules of Civil Procedure 59, 60, and 65 in its January 29, 1998, rulings on the COLA amendment. Rule 59(e) provides for the altering or amending of a judgment. *See* Fed.R.Civ.P. 59(e). Rule 60(b) allows relief from a judgment or order when evidence has been newly discovered or for any other reason "justifying relief

**132**

from the operation of the judgment." *See* Fed.R.Civ.P. 60(b)(2), (6). Rule 65 provides for the issuance of a preliminary injunction. *See* Fed.R.Civ.P. 65. We review a district court's ruling on motions under all of these Rules for an abuse of discretion. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (Rule 59); *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 729 (2d Cir.1998) (Rule 60); *Securities and Exch. Comm'n v. Cavanagh,* 155 F.3d 129, 132 (2d Cir.1998) (Rule 65).

We find that the district court's actions in refusing to re-open *Devlin II* with respect to the COLA amendment and with respect to the preliminary injunction did not constitute an abuse of discretion. The exact COLA issue that the appellants are pursuing in *Devlin II* is being addressed by the district court in Maryland. While appellants argue that *Bobo II* was filed after *Devlin II*, that consideration is not determinative, and the district court's failure to weigh it heavily was not an abuse of discretion. It seems eminently sensible that the Maryland district court should resolve fully the COLA amendment issue, given that that court already ruled that the amendment could be repealed as to those who retired prior to 1991, and that court is already entertaining a suit in which the legality of such a repeal is at issue. Moreover, though Devlin did not want to be the lead defendant in *Bobo II* because the case was pending in Maryland and Devlin was residing in the Northeast, the fact remains that Devlin and others in his position can be actively involved in the case. *See* Fed. R.Civ.P. 24(b).

We affirm the district court's resolution of the COLA amendment issue.

*Conclusion*

For the reasons set forth above, the judgment of the district court is vacated in part and remanded for consideration of (1) plaintiffs' conversion claim, and (2) the possibility of consolidating plaintiffs' ADEA claim relating to the Medical Insurance Plan with the surviving portions of *Devlin I.* As to all other claims adjudicated by the district court in this action, we affirm.