**Terence R. CAMERON, Plaintiff,**

v.

**Marvin V. CHURCH, Henry J. Stanton, Jay Hashmall, Richard Manley, Paula Redd Zeman, and The County of Westchester, Defendants.**

**No. 01 Civ. 11823(LTS).**

United States District Court, S.D. New York.

March 24, 2003.

---

Madu, Edozie & Madu. P.C., By: K.C. Okoli, Sam O. Madugebuna, New York City, for Plaintiff.

Cooper & McCann, LLP, By: Gary G. Cooper, Elmsford, New York City, for Church.

Epstein, Becker & Green, P.C., By: Michael A. Kalish, New York City, for Stanton, Hashmall, Manley, Zeman and Westchester.

## OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Terence R. Cameron ("Plaintiff" or "Cameron") brings this action against Marvin V. Church, Plaintiff's former supervisor at the Westchester County Department of Transportation ("Church" and "DOT", respectively), Henry J. Stanton, the Deputy Commissioner of the DOT ("Stanton"), Jay Hashmall, the Deputy County Executive for the County of Westchester ("Hashmall"), Richard Manley, the Director of the Westchester County Office of the Disabled ("Manley"), Paula Redd Zeman, the Commissioner of Human Resources for the County of Westchester ("Zeman"), and the County of Westchester, New York ("Westchester County" or "County") (collectively, "Defendants"). Plaintiff asserts causes of action: pursuant to 42 U.S.C. section 1983 ("Section 1983"), for violation of his rights to free speech, freedom of association, and the right to petition the government for redress under the First Amendment of the United States Constitution; pursuant to 42 U.S.C. section 1981, as amended, and Section 1983, for race discrimination, retaliation, and constructive discharge; pursuant to 42 U.S.C. section 1985(3), for conspiracy to discriminate and to retaliate; and, pursuant to 42 U.S.C. section 1986, for knowledge of the conspiracy and failure to prevent it in connection with the alleged racial discrimination and retaliation. Plaintiff also seeks damages pursuant to the anti-discrimination provisions of New York Executive Law Section 296.

The Court has jurisdiction of the federal claims asserted in this action pursuant to 28 U.S.C. sections 1331 and 1343. Plaintiff does not specify a jurisdictional basis for his claims under the New York Executive Law; he presumably intends to invoke the Court's supplemental jurisdiction under 28 U.S.C. section 1367 as to those claims, and the Court finds that it has jurisdiction of the claims under that statutory provision.

Before the Court are a motion by Church for summary judgment pursuant to Federal Rule of Civil Procedure 56 and a motion by the remaining Defendants to

dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Both motions are premised principally on arguments that the instant action is precluded in whole or in part by the dismissal of an earlier action, *Cameron v. Church, Stanton, and the County of Westchester*, No. 01 Civ. 443(BDP) (S.D.N.Y., filed January 19, 2001) (hereinafter referred to as *"Cameron I"*), arising from Cameron's employment with DOT, his efforts to change jobs within DOT and the eventual termination of his DOT employment.

The Court has considered thoroughly all of the submissions related to these motions. For the reasons set forth below, the Complaint will be dismissed in its entirety for failure to state a claim upon which relief can be granted. Accordingly, the Court need not, and does not, address Defendant Church's motion for summary judgment.

## BACKGROUND

### Factual Allegations

The Complaint alleges the following pertinent facts. In 1988, Plaintiff, a white male, was employed at the DOT. In or about September 14, 1998, he responded to a job posting for a "Program Specialist," a "Grade 10" provisional position in the DOT with an annual salary approximately $10,000 higher than the one Plaintiff was receiving at the time. Compl. ¶¶ 3, 21. Plaintiff was well qualified for the program specialist position. *Id.* ¶¶ 10, 22. On or about October 13, 1998, Plaintiff was interviewed for the position and was advised by the interview committee that he had impressed them and done "very well" on the interview. *Id.* ¶ 23. The committee then recommended to Church, a black male, and Stanton, a white male, the appointment of the applicants in order of qualifications, determining that Plaintiff was the second

most qualified candidate for promotion. *Id.; see also id.* at ¶¶ 4,6. When the first ranked candidate declined the position Church, with Stanton's knowledge and concurrence, refused to appoint Plaintiff out of personal animosity for Plaintiff's cousin, Michael Finnegan ("Finnegan"), who had been Church's political opponent in Peekskill city politics some years back, and in furtherance of Church's racist policy to literally make appointments to subordinate positions of people who "look like [Church]" or who were politically connected to the Democratic Party. *Id.* ¶¶ 18, 24. Church, by various actions as Commissioner, showed his racist bent by his appointment and general management of the DOT. *Id.* ¶ 19.

On or about December 28, 1998, defendants Stanton, Church, Hashmall and Zeman agreed to skip Cameron for promotion and instead appoint one Florence Petronio ("Petronio") to the Program Specialist position by reason of Cameron's familial relationship to Finnegan and due to the political affiliation and connections of Petronio. *Id.* ¶ 26, 27. Plaintiff, thereafter, exercised his free speech rights by voicing his opinion about Petronio's total incompetence as Program Specialist, and Church's mismanagement of the DOT, and the effect these had on the morale and the general operation of the DOT. *Id.* ¶ 29.

Plaintiff successfully challenged his denial of the promotion to Program Specialist and the appointment of Petronio to the Program Specialist position in an Article 78 proceeding filed in the Westchester County Supreme Court, in which the Court found the Petronio appointment to have been arbitrary and capricious. *Id.* ¶ 30. Following Plaintiff's commencement of the Article 78 proceeding, Defendants took retaliatory action against him, including abolishing the Program Specialist posi-

tion while it was still under legal challenge. *Id.* ¶ 31.

The judgment in the Article 78 proceeding was appealed to the Appellate Division, Second Department. In or about November 2000, prior to the Second Department's decision on the appeal and during the Westchester County budgeting process, Defendants met, decided to, and did submit a proposed budget for the DOT which, if adopted by Westchester's Board of Legislators, would result in the abolition of the Program Specialist position. *Id.* ¶ 35. Plaintiff notified members of Westchester's Board of Legislators of Defendants' retaliatory plan as it pertained to him and other Westchester employees. *Id.* ¶ 36. Plaintiff further notified members of Westchester's Board of Legislators that the Program Specialist position was under legal challenge, and that the proposed elimination of the position from the 2001 budget was in retaliation for his filing of a lawsuit against Westchester County. *Id.* ¶ 37. The proposed budget eliminating the Program Specialist position was adopted by Westchester's Board of Legislators and, on or about December 11, 2000, the position was abolished. *Id.* ¶ 39. According to Plaintiff, the Program Specialist position was eliminated "despite the fact that Westchester's Board of Legislators knew or should have known that a similar budget proposal submitted by the defendants for the year 2000 turned out to be a First Amendment retaliatory plan resulting in the illegal termination of two other [DOT] employees and the unlawful 'creation' of a new position in a different department for Petronio." *Id.* ¶ 40. Plaintiff alleges that the Program Specialist position was eliminated in retaliation for Plaintiff's exercise of his First Amendment free speech rights and participation in protected activity, including the commencement of the Article 78 proceeding. *Id.* ¶ 42. As a result of continuing retaliation and a pervasive hostile work environment

created for Plaintiff, Plaintiff was forced to resign from his County employment on February 14, 2001. *Id.* ¶ 45.

Plaintiff further alleges, generally and upon information and belief, that Westchester County, "through its Department of Transportation under Church," maintained a policy and practice of "denying their white employees equal employment opportunities" and of "discriminating against persons by reason of color or race and retaliating against such persons for voicing their objection to such discrimination or engaging in protected activity." *Id.* ¶¶ 43, 44. Plaintiff asserts that, as a result of the conduct described in the complaint, he was

> unlawfully denied career advancement in the Department by reason of his familial relationship with Michael Finnegan; deprived of his job position; punished for expressions of concerns regarding matters of public interest within the Department; unlawfully caused to suffer adverse employment action intended to punish him for his exercise of First Amendment protected associational and speech rights with respect to Church; impaired [sic] Cameron's right to associate with Michael Finnegan without fear of retribution or punishment; unlawfully denied career advancement in the Department of Transportation by reason of the appointment of Petronio on the basis of her political affiliation and political activities; [and] retaliated against for the exercise of his First Amendment protected right to petition the government for redress of grievances....

*Id.* ¶ 45.

Plaintiff's First Cause of Action, asserted pursuant to 42 U.S.C. section 1983, asserts violation of his First Amendment rights. *Id.* ¶ 47. In a Second Cause of Action, asserted pursuant to 42 U.S.C. sections 1981 and 1983, Plaintiff alleges that

in the course of his employment with Westchester County, he was subjected to differential terms and conditions of employment, including harassment, denial of tuition reimbursement and denial of promotion, "because he is a white male." *Id.* ¶¶ 49–52. A Third Cause of Action asserts that "[a]ll the various actions taken by the defendants against Cameron subsequent to April 14, 1999, when he filed the Article 78 proceeding, constitute unlawful retaliation in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983." *Id.* ¶ 55. A Fourth Cause of Action asserts that, "[b]y forcing Cameron to prematurely resign his appointment with Westchester County, the individual defendants wrongfully interfered with Cameron's employment and the County constructively discharged him, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983." *Id.* ¶ 58. In his Fifth Cause of Action, Plaintiff alleges that the forced resignation constituted wrongful interference with his employment and constructive discharge in violation of section 296 of the New York State Executive Law. *Id.* ¶ 61. A Sixth Cause of Action, also premised on section 296 of the New York State Executive Law, asserts that "[t]he timing and surrounding circumstances of the elimination of the Program Specialist position by the County while appointment thereto was under legal challenge ... evinced a clear intent on the part of defendants ... and, as such was a violation of plaintiff's rights." *Id.* ¶ 64. In a Seventh Cause of Action, asserted pursuant to 42 U.S.C. section 1985(3), Plaintiff alleges that Defendants conspired, with discriminatory intent, to deprive Cameron of rights that "were not denied to blacks similarly situated or politically connected employees of the County," in retaliation for Plaintiff's exercise of his free speech and association rights and to inhibit the exercise of such rights by Plaintiff "and similarly situated employees." *Id.* ¶¶ 67–69. Plaintiff's Eighth Cause of Action, seeking recovery under 42 U.S.C. section 1986, asserts that Defendants knew of the alleged conspiracy but failed to prevent it although they had the power to do so.

*Procedural Background*

On January 19, 2001, Plaintiff initiated the *Cameron I* lawsuit in this Court. Defendants Westchester County and Stanton served a motion to dismiss the *Cameron I* complaint for failure to state a cause of action on March 19, 2001. On that same day, defendant Church served a motion to dismiss or for summary judgment. In response to the motions, Plaintiff amended his complaint on March 28, 2001.

Plaintiff's amended complaint in *Cameron I*, which named only Church and Stanton, each individually, and the County of Westchester, as parties defendant, included factual allegations concerning the Finnegan incident, Plaintiff's efforts to secure the Program Specialist position, and the hiring and deficiencies of Petronio, that were virtually identical to those in the instant complaint. (*Cameron I* Am. Comp. ¶¶ 7–18.) It further recited the commencement of Cameron's Article 78 proceeding and alleged retaliatory actions by the defendants in response to the commencement of that proceeding, including isolation of Plaintiff in the office, discriminatory monitoring of Plaintiff's phone, facsimile machine and photocopier use, and refusal to permit Plaintiff to look at his personnel file. (*Id.* ¶¶ 19–20.) Cameron alleged that

[as] a proximate result of Defendants' ... conduct, Plaintiff has been: unlawfully denied career advancement in the Department of Transportation by reason of his familial relationship to Michael Finnegan; unlawfully caused to suffer adverse employment action intended to punish him for Finnegan's prior exercise of First Amendment protected associational and speech rights with respect to

Church; unlawfully denied career advancement in the Department of Transportation by reason of the Defendants' appointment of Florence Petronio on the basis of her political affiliation and political activities; [and] retaliated against for the exercise of his First Amendment protected right to petition government for redress of grievances....

(*Id.* ¶ 21.) Two causes of action were asserted pursuant to section 1983: one on a "third party" basis, for violation of Plaintiff's First Amendment rights; and one for direct violation of Plaintiff's First Amendment rights. (*Id.* ¶¶ 21 [1]–24.)

By Amended Decision and Order dated October 24, 2001, (the "Parker Decision"), then-District Judge Barrington D. Parker, Jr., dismissed Plaintiff's amended complaint in *Cameron I* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Judge Parker held that Plaintiff had failed to allege facts sufficient to state a claim with respect to the DOT's alleged refusal to promote him to Program Specialist in retaliation for the exercise of Finnegan's First Amendment rights, finding that Finnegan's alleged private comments to Church did not constitute constitutionally-protected speech and that, in any event, Plaintiff had failed to allege facts sufficient to establish a causal connection between Finnegan's speech and the denial of the promotion. Parker Decision at 5–7. He further held that Cameron lacked standing to raise Finnegan's First Amendment claims. Parker Decision at 7–9. With respect to Cameron's claim for violation of his own First Amendment rights to freedom of association and for retaliation in connection with Cameron's pursuit of the Article 78 proceeding, Judge Parker held that the complaint set forth insufficient facts to state a claim for violation of Plaintiff's associational rights and that the acts of retaliation alleged

were insufficient to rise to the necessary level of "adverse employment action" required for a retaliation cause of action under section 1983. *Id.* at 9 and n. 5. Plaintiff did not appeal the dismissal of *Cameron I.*

Plaintiff filed the instant complaint (hereinafter referred to as *"Cameron II"*) on December 27, 2001.

## DISCUSSION

### Rule 12(b)(6) Motion

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, a court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Grandon v. Merrill Lynch,* 147 F.3d 184, 188 (2d Cir.1998). The court must not dismiss the action unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). The Court analyzes Plaintiff's allegations in light of this standard.

### Collateral Estoppel and Res Judicata

Defendants assert that the doctrines of *res judicata* and collateral estoppel bar Plaintiff's claims here, in *Cameron II.* Although such affirmative defenses are generally pled in a defendant's answer and therefore ordinarily cannot serve as the basis for a pre-answer motion to dismiss, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998); *see also Day*

---

**1.** Two consecutive paragraphs of the Amended Complaint are designated as paragraph 21.

*v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) ("when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of res judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer") (citations omitted); *Sassower v. Abrams,* 833 F.Supp. 253, 264 (S.D.N.Y.1993) ("the defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment").

Here, bases for application of the doctrines of *res judicata* and collateral estoppel are set forth on the face of the Complaint and are apparent in the Parker Decision in *Cameron I,* which is a matter of public record. Collateral estoppel, or issue preclusion, bars Plaintiff's claims in *Cameron II* to the extent they are premised on Finnegan's speech or conduct and/or Church's alleged reaction to the same, as well as to the extent his First Amendment retaliation claim is premised on the employment actions alleged in the *Cameron I* amended complaint. *Res judicata* bars Plaintiff's remaining claims because they arise out of the same factual predicate as *Cameron I,* and could have been asserted in *Cameron I.*

### Collateral Estoppel

In his First Claim in *Cameron II,* Plaintiff asserts that Defendants violated his First Amendment rights to free speech, freedom of association, and to petition the government for redress of grievances. Compl. ¶ 47. The complaint, construed liberally, alleges as factual underpinnings for this claim the matters relating to Finnegan's comments to Church, Petronio's and Church's political affiliations, comments allegedly made by Plaintiff concerning Petronio's incompetence and the effect of such comments on morale in the Department, Cameron's commencement of the Article 78 proceeding, and various actions allegedly taken in retaliation for

Cameron's speech. As noted above Judge Parker, in dismissing *Cameron I,* held that Plaintiff lacked standing to assert Finnegan's First Amendment rights, had failed sufficiently to allege a violation of his own rights to free association in connection with the Petronio incident, and that the employment actions recited in the amended *Cameron I* complaint did not constitute the requisite adverse employment actions.

For collateral estoppel to bar a party from litigating an issue in a second proceeding, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir. 1986); *see also Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992).

■ Each of these criteria is met insofar as Plaintiff seeks to litigate any issues concerning retaliation or associational rights violations arising from Finnegan's comments to Church and the denial of the Program Specialist position to Plaintiff in favor of Petronio. Indeed, Plaintiff as much as admits this in his memorandum of law filed in opposition to Church's summary judgment motion, "conced[ing] that, to the extent it appears that plaintiff is making a claim based upon the Finnegan–Church conversation, the Complaint is inartfully drawn," and asserting that the speech underlying his First Amendment claim in *Cameron II* consists, instead, of his criticism of the running of the DOT and his Article 78 proceeding, and his criticism of Petronio's job performance. (Pl.'s Mem. in Opp'n to Pl.'s Mot. Summ. J. at 8–9.)

As to the former issues, collateral estoppel is clearly applicable. Both complaints alleged the Finnegan–Church interchange; both allege that Cameron was denied employment opportunities by reason of his relationship with Finnegan, that he was punished for exercise of his associational rights and that his right to associate with Finnegan was impaired. (*Cameron II* Compl. at ¶¶ 7, 12–20, 21; *Cameron I* Am. Compl. at ¶¶ 7, 12–21.) Precisely these issues were decided against Plaintiff in the Parker Decision. (Parker Decision at 6–7, 10.) Similarly, both complaints allege that Petronio was awarded the Program Specialist position by reason of her political affiliation and political activities. (*Cameron II* Compl. at ¶ 45; *Cameron I* Am. Compl. at ¶¶ 18, 21.) Judge Parker held that *Cameron I* failed to state a cause of action in this respect. Parker Decision at 10. The Parker Decision also examined the alleged acts of harassment detailed in the amended *Cameron I* complaint in connection with the allegation of retaliation for the filing of Cameron's Article 78 proceeding, holding that all failed "to rise to the level of an adverse employment action for purposes of § 1983." (Parker Decision at 10 n. 5.)

The Parker Decision makes it clear that all of the foregoing issues were actually litigated (indeed, Plaintiff makes no claim here that they were not); the decisions were necessary to support Judge Parker's valid and final decision that Plaintiff had failed to establish standing and/or state causes of action on the First Amendment claims he raised in that proceeding. As a dismissal pursuant to Rule 12(b)(6), the Parker Decision operated as a decision on the merits of the claims asserted in *Cameron I* and led to the entry of a final judgment on the merits in that action. *See* Parker Decision at 11; Fed.R.Civ.P. 12(b)(6); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Collat-

eral estoppel thus precludes relitigation of any of these issues here, and the *Cameron II* complaint will be dismissed to the extent it seeks to raise any of them.

*Res Judicata*

The claims asserted in *Cameron II* are not, however, limited on the face of the complaint to the ones Judge Parker dealt with in *Cameron I*. The *Cameron II* complaint adds factual allegations and defendants, and characterizes causes of action differently. Defendants here argue, nonetheless, that Plaintiff's additional claims are precluded by the doctrine of *res judicata*, or claim preclusion.

*Res judicata* "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same [claim, or] cause of action." *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985). *Res judicata* operates so that " '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Saud v. Bank of New York*, 929 F.2d 916, 918–19 (2d Cir.1991) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). It applies "not only as to what was pleaded, but also as to what could have been pleaded." *Teltronics Services, Inc.* 762 F.2d at 193. *Res judicata* bars cases that arise from the same "operative nucleus of fact." *Olmstead v. Amoco Oil Company*, 725 F.2d 627, 632 (11th Cir.1984). "New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*." *Teltronics Services, Inc.*, 762 F.2d at 193. "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time,

space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations....'" *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997) (quoting Restatement (Second) of Judgments § 24(2) (1982)).

There is no dispute that the dismissal of *Cameron I* constituted a final judgment on the merits by a court of competent jurisdiction. Plaintiff argues, however, that the claims or causes of action in *Cameron II* are different. According to Plaintiff, his invocation of different legal theories and allegation of facts supporting an inference of different motivations for certain of the conduct that was complained of in *Cameron I* distinguish the instant action sufficiently to defeat the application of *res judicata.* Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 8–17. He also argues that the constructive discharge complained of in *Cameron II* had not yet occurred when the *Cameron I* action was commenced and that facts post-dating the Parker Decision are material to his claim relating to Defendants' failure to reconsider him for appointment to the Program Specialist position in accordance with the order of the Appellate Division. *Id.* at 15–16.

 The determination as to whether Plaintiff is precluded by the *Cameron I* decision from pursuing the claims asserted in *Cameron II* turns, in the first instance, on whether the claims arise from the same nucleus of operative fact as those in *Cameron I. Olmstead v. Amoco Oil Company,* 725 F.2d at 632. Where material factual allegations overlap, "the facts essential to

the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts *essential to the second* were [already] present in the first.'" *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 110–11 (2d Cir.2000) (citations omitted; emphasis in original). "[A] plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)" *Id.* at 110 (citations omitted). The essential question is whether the overlapping facts are sufficiently related to each other so as to constitute a single transaction or series of transactions. *Id.* at 111. Furthermore, although *"res judicata* will not bar a suit based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts"[2] and a party is not required to amend a complaint to assert causes of action arising from events occurring after the filing of a complaint,[3] the bar will apply when the subsequent facts are merely additional examples of the earlier-complained of conduct, such that the action remains based principally upon the shared common nucleus of operative facts. *Id.* at 113. Furthermore, the leading cases in which courts have declined to hold *res judicata* applicable to claims arising from events post-dating the commencement of the prior litigation did not involve situations in which the prior complaint was in fact amended after the occurrence of the events.[4]

Much of the conduct complained of here, in *Cameron II,* predated the amended complaint in *Cameron I.* The Finnegan-related interactions alleged in

2. *Kiryas Joel,* 207 F.3d at 113.

3. *See SEC v. First Jersey Securities,* 101 F.3d 1450, 1464 (2d Cir.1996).

4. *See e.g., First Jersey Securities,* 101 F.3d at 1464 (finding that *res judicata* did not bar a

suit based upon fraudulent acts occurring after the filing of a previous suit, even though such acts were part of the same pattern of fraudulent acts that had been the subject of the earlier suit).

*Cameron II* began years prior to Plaintiff's employment by defendant County of Westchester (Compl. ¶ 12); the Petronio appointment was made in December of 1998 (*id.* ¶ 26); the Article 78 proceeding was commenced in 1999 and the harassment arising in alleged retaliation for it is alleged to have commenced in that time frame (*id.* ¶¶ 30–31); and the recommendation of elimination of the Program Specialist position from the budget was made by the DOT and opposed by Plaintiff in November 2000 (*id.* ¶¶ 35–36), considered by the Legislature in December 2000 (with Plaintiff testifying in opposition and asserting that the elimination was being proposed in retaliation for his protected conduct) (*id.*), and passed by the Legislature in December 2000 (*id.* ¶ 39). *Cameron I* was commenced on January 19, 2001, with a complaint that recited the Finnegan and Petronio appointment-related facts and focused on the grant of the program specialist position to Petronio rather than Cameron. S.D.N.Y. docket, *Cameron I*, No. 01 Civ. 443; *Cameron I* Compl. Cameron resigned his employment with DOT on or about February 14, 2001, allegedly as the result of prior retaliatory treatment and harassment. *Cameron II* Compl. ¶ 42. Plaintiff filed an amended complaint in *Cameron I* on March 28, 2001, in which he added allegations regarding disparate, allegedly adverse, employment actions postdating the Petronio appointment, and his claim concerning disparate treatment and harassment in retaliation for his Article 78 proceeding. *Cameron I* docket; *Cameron I* Am. Compl. This amended complaint was the subject of the Parker Decision.

The Court must, accordingly, examine the allegations of the instant, *Cameron II* complaint, against those of the amended complaint in *Cameron I* to determine the *res judicata* effect, if any, of the Parker Decision. The Court reviews each of the *Cameron II* claims in turn.

*First Cause of Action*

■ Incorporating by reference the general factual recitation of the first portion of the *Cameron II* complaint, this claim asserts that "defendants' conduct and/or retaliatory actions" violated Plaintiff's First Amendment rights. The core elements of the conduct and actions alleged in the *Cameron II* complaint overlap substantially those alleged in the amended *Cameron I* complaint which, as noted above, covered the Finnegan/Petronio allegations and disparate and other allegedly adverse treatment in the workplace, and asserted that the adverse employment actions were taken in retaliation for Cameron's exercise of his First Amendment rights to petition for redress of grievances. Neither the addition of allegations regarding particular instances of treatment in the course of the employment nor the addition of facts positing Plaintiff's criticism of Petronio and Church as a motivation for the retaliation alters the core elements of the conduct complained of. Accordingly, Plaintiff's First Cause of Action is barred by *res judicata.*

*Second Cause of Action*

■ Plaintiff's Second Cause of Action, alleging disparate treatment on the basis of race and asserted pursuant to 42 U.S.C. section 1981, also incorporates by reference the general factual recitation of the first portion of the complaint. In it, Plaintiff seeks damages for differential treatment, which is alleged to include harassment, denial of tuition reimbursement and denial of promotion. These are the very same actions that are alleged to have been taken in retaliation for exercise of Plaintiff's First Amendment rights. All of them were taken prior to the filing of the amended complaint in *Cameron I;* that complaint itself alleged harassment and denial of promotion. Thus, there is again a substantial overlap in the core elements of the conduct and actions complained of in

the two lawsuits. The addition, in *Cameron II*, of allegations concerning the respective races of the parties may go to supplying a different view of the motivation for the actions complained of, but it does not remove the actions from the ambit of the transactions complained of in *Cameron I*, and thus from the universe of claims that were concluded on their merits in that action. *See generally, Salerno v. Leica,* 139 F.Supp.2d 377, 383–384 (W.D.N.Y. 2001) (dismissal of first federal action in which former employee asserted discriminatory termination and discriminatory denial of severance benefits presented *res judicata* bar to subsequent ERISA civil enforcement claim for same benefits, where claims shared common core of operative facts and dealt with connected series of related transactions, even though prior action required evidence that employer's actions were motivated by discriminatory intent). The Second Cause of Action is therefore barred by *res judicata.*

### Third Cause of Action

Plaintiff's Third Cause of Action, alleging that "all the various actions taken by the defendants against Cameron subsequent to" the April 1999 commencement of his Article 78 proceeding constituted unlawful retaliation,[5] is likewise barred. Such actions were alleged, and complained of as retaliatory, in the amended complaint in *Cameron I*. The *Cameron II* complaint makes it quite apparent that all such actions are part of the same series of transactions or occurrences, and thus of the dismissed claim.

### Fourth and Fifth Causes of Action

■ The Fourth and Fifth Causes of action allege that Plaintiff was constructively discharged, and that by constructively discharging him Defendants violated the federal and New York State civil rights laws. *Cameron II* makes it clear that the alleged constructive discharge occurred prior to the date on which the amended complaint was filed in *Cameron I*, and that the claim of constructive discharge is premised on the same set of transactions and occurrences that the Plaintiff characterized in *Cameron I* as retaliatory and seeks to fit into other rubrics in *Cameron II*. As such, these causes of action assert the same claim that was dismissed in *Cameron I* and are barred by *res judicata.*

### Sixth Cause of Action

The Sixth Cause of Action asserts that the County's elimination of the Program Specialist position while Plaintiff's Article 78 proceedings were pending "evinced a clear intent [ (to do what, Plaintiff does not specify) ] on the part of defendants" and therefore violated the state civil rights statute. *Cameron II* alleges, as noted above, that the elimination of the position was proposed in November 2000, adopted in December of that year by the County legislature, and that Plaintiff actively opposed the budget measure during that time frame. Both the original and the amended *Cameron I* complaints, which complained of the denial to Plaintiff of the Program Specialist position in particular and of "career advancement" in general,[6] were filed after the position was eliminated. Plaintiff's claim of violation of his state civil rights thus clearly was or could have been brought in *Cameron I* and is barred by *res judicata.*[7]

---

**5.** *Cameron II* Am. Compl. at ¶ 55.

**6.** *Cameron I* Original Compl. ¶ 19; *Cameron I* Am. Compl. ¶ 21.

**7.** Plaintiff argues in his opposition papers that this claim falls outside the scope of the claim dismissed in *Cameron I* because it arises from a November 2001 notification to Plaintiff that he could not be considered for reappointment

*Seventh and Eighth Causes of Action*

Plaintiff's Seventh and Eighth Causes of Action, which are asserted under 42 U.S.C. sections 1985 and 1986, respectively, incorporate by reference all of the preceding allegations of the *Cameron II* complaint. In the Seventh Cause of Action, Plaintiff alleges that defendants conspired to deprive him of rights for reasons that were racially or politically discriminatory or retaliatory; in the Eighth Cause of Action, Plaintiff asserts that Defendants knew of the conspiracy and failed to prevent it. The underlying deprivations of rights were, as shown at length above, the subject of *Cameron I*. The core elements of these claims thus rest on the same transactions and occurrences that underlay *Cameron I*. They are barred by *res judicata*.

■ Clearly, "the facts essential to [the *Cameron II* proceeding] were already present in [*Cameron I*]." *Kiryas Joel*, 207 F.3d 105, 110–11 (citation omitted); *Carr v. Health Ins. Plan*, 111 F.Supp.2d 403, 410–11 (S.D.N.Y.2000). Because Plaintiff's *Cameron II* claims are ones that were resolved on their merits in *Cameron I*, Plaintiff is precluded from pursuing them here. *Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims. *See Waldman v. Village of Kiryas Joel*, 39 F.Supp.2d 370, 382 (S.D.N.Y.1999) (government officials are in privity with the

governmental entity that they serve for purposes of preclusion analysis); *Official Publications v. Kable News*, 811 F.Supp. 143, 147 (S.D.N.Y.1993) ("Where the 'new' defendants are sufficiently related to one or more of the defendants in the previous action which arise from the same transaction all defendants may invoke *res judicata*."). The complaint will therefore be dismissed in its entirety, as to all Defendants.

■ In addition to the bar on *res judicata* grounds, Plaintiff's Section 1985 and 1986 conspiracy claims are barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine provides that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, legally are incapable of conspiring together. *See Rini v. Zwirn*, 886 F.Supp. 270, 291 (E.D.N.Y.1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.") (citations omitted). Here, the Defendants' actions were all allegedly taken in their capacities as officers or employees of the defendant County. The intracorporate conspiracy doctrine thus bars Plaintiff's Section 1985 claim because the individual defendants were acting within the scope of their employment for the County of Westchester. As no actionable conspiracy existed, Plaintiff's Section 1986 claim fails because it requires a valid Section 1985 claim. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996) ("Section 1986 imposes liability on an individual who has knowl-

---

to the position because it had been eliminated. Although *"res judicata* will not bar a suit based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts," *Kiryas Joel*, 207 F.3d at 113, this is not such a legally significant act in the civil rights context. The complaint explicitly focuses on the motivation and timing of the elimination of the position in

asserting this claim (*Cameron II* Compl. ¶ 64). The claim as asserted in *Cameron II* is not based upon the later notification, which is not even alluded to in the *Cameron II* complaint. Indeed, the *Cameron II* complaint makes plain that Plaintiff was aware of the elimination at the time it occurred and actively opposed the elimination as retaliatory. *See Cameron II* Compl. at ¶ 37.

edge of discrimination prohibited under § 1985. Hence, a § 1986 claim is contingent on a valid § 1985 claim.") (citation omitted).

## CONCLUSION

For the reasons stated above, the Complaint is dismissed in its entirety, on grounds of collateral estoppel and *res judicata*, for failure to state a claim upon which relief may be granted.

SO ORDERED.